## [No. 1707.]

### A. L. GEORGE *v.* THE STATE.

1. CASE APPROVED.— For a determination of the principal questions involved in this case, see the preceding case of *Sharpe* v. *The State, ante,* p. 486. Note, also, the dissenting opinion of Hurt, Judge, in that case, which is adopted by him and applied to this case.
2. PRACTICE — SEQUESTRATION OF WITNESSES.— It is within the discretionary power of the trial court to receive or to reject the testimony of a witness who, not having been placed under the rule with the other witnesses, was present in court and heard the evidence in the case. The action of the trial court in such matters will only be revised when an abuse of such discretion has been made clearly to appear.
3. SAME — EVIDENCE.— It was not error to permit witnesses for the State to testify that, eleven days before the commission of the murder, they saw the co-defendants of the appellant in the town in which the homicide was committed. In connection with other proof, this evidence tended to show preparation and complicity on the part of appellant as well as his co-defendants.
4. SAME — VERDICT.— See the statement of the case for a verdict *held* sufficiently definite to identify the defendant on trial as the party found guilty.
5. MURDER — FACT CASE.— See the statements of the case in this and *Sharpe's* case, *ante,* p. 486, for evidence *held* sufficient to support a capital conviction for murder.

APPEAL from the District Court of Fayette. Tried below before the Hon. L. W. Moore.

This is the companion case of *Sharpe* v. *The State, ante,* p. 486. The conviction was murder in the first degree, with the death penalty assessed, the victim being E. Knesek. The evidence in both cases was essentially the same. A few additional witnesses, however, testified on this trial, and their testimony alone is summarized in this report.

Miss Julia Knesek corroborated the testimony of her mother, Mrs. Anna Knesek, and testified in addition, substantially as follows: "I was behind the counter in my father's store. My mother

was sitting on a bench in front of the store. A man, whom I now recognize as the defendant George, came in and bought a bottle of whisky, and then called for a glass of beer, which he drank. About this time Seargent came in. George then ordered another glass of beer, drank it and paid for his purchases. He did not ask Seargent to drink, but the two men acted as strangers to each other. About this time Sharpe came in. The three staid in the store for a short time and left, going towards Flatonia. They returned in a short time and Seargeant came into the store and ordered some salmon, which witness took from a shelf and placed on the counter. Witness asked him if he wanted to eat the salmon in the house. He replied that he did, and witness turned to get the tin-cutters. Witness then saw Sharpe with a pistol drawn on her mother, and as she turned towards Seargent again she saw that he had his pistol drawn on her. He told witness that if she hallooed he would kill her." The witness then detailed the subsequent proceedings exactly as her mother did on Sharpe's trial.

On cross-examination this witness stated that when the defendant and his companions first came to the store, witness's mother, brother and John Michael were present. Witness denied that at the coroner's inquest she testified that her mother was trying to get a pistol when Sharpe first drew his weapon. She did not testify on that occasion that Sharpe was the man who caught hold of Mrs. Knesek and drew his pistol on her.

W. L. Close testified, for the defense, that he lived in Lavaca county, about ten miles from New Prague (formerly Hottentot), the town in which Knesek was killed. He knew George, Sharpe and Seargent. The parties named came to a point near the witness's house about 11 o'clock on the night of October 1, 1884. Seargent came to witness's house, and witness returned with him to where Sharpe and George were. Sharpe had several bad cuts on his head, and one on his face. His right arm was badly skinned and bruised, and his hand was broken. George had been shot once. George had with him a thirty-eight calibre pistol. When he (George) left witness's house on that evening, he said that he was going to his cousin's to get some things he had left there.

Cross-examined, this witness stated that he was not in New Prague (Hottentot) on the evening of September 21, 1884. Sharpe had been staying at witness's house about half of the time for two months prior to the killing. George and Seargent were frequently there. The three parties were at witness's house together on the evening of and before the killing. They left about 3 o'clock. They

did not leave together, but each about the same time started for their separate homes. Seargent said that he was going to Runnels county; Sharpe that he was going to Williamson county, and defendant that he was going to Brown county. Sharpe has had no regular home for two years.

Doctor J. W. Smith testified, for the defense, that he examined Sharpe in jail a few days before this trial. He found the scars of some recent wounds on his head, and one round scar on his face. The scars indicated deep cuts. Witness could not tell whether they were one, two, three or six months old. They looked recent. Witness also examined George, and found that he had been shot, the ball entering the back and making its exit under the arm. The wound on George seemed more recent than those on Sharpe.

Doctor B. W. Bristow testified that he examined the body of the deceased, and found that it had been penetrated three, perhaps four, different times. There was one wound in the neck, one in the back, one in the left side and one in front. It was the opinion of the witness that the hole in the back and the one in front were made by the same bullet.

Charles Mücke, for the defense, corroborated Doctor Bristow as to the number of bullet holes, but was of opinion that each of the four was made by a separate bullet.

A. Nesesta testified, for the defense, that he and another party were at the deceased's residence, near his store, playing cards with the deceased, on the night of the homicide. Mrs. Knesek came to the house and told deceased about the presence of three suspicious strangers at the store. Deceased did not go to the store at once. He did go to the store, however, in a short while, and after a time the witness heard a number of shots. When witness got to the store he found E. Knesek dead, shot in the manner described by preceding witnesses. He did not notice that Knesek's vest was burned.

The second head-note of this report refers to the exclusion of the testimony of James Sharpe, who was introduced by the defense to prove that the defendant and Sharpe and Seargent came to his house a few hours after the homicide, when he, witness, extracted the ball from the wound in defendant's body. The bill of exceptions recites that witness would testify that this ball entered in front, just under the right arm, and lodged beneath the skin back of the shoulder. The court sustained the State's objection to the competency of this witness because he had not been placed under the rule, but was present in court and heard some of the evidence in

the case.   The court explains that James Sharpe was not permitted to testify because the defendant's counsel admitted that they knew, while the trial was going on, that the witness was present in court, and that they knew what his evidence would be.

The verdict complained of as indefinite, and which forms the subject-matter of the fourth head-note, reads as follows:  "We, the jury, find the defendant guilty of murder in the first degree, and assess his punishment at death."

The motion for new trial raised the questions discussed in the opinion, denounced the charge of the court, and assailed the evidence as insufficient to support the verdict.

*Duncan & Meerschiedt* filed an able brief and argument for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

Willson, Judge.   Many of the questions presented in the record in this case have been discussed and determined in the companion case of *Sharpe* v. *The State*, this day decided (*ante*, p. 486), and it is therefore unnecessary that we should again notice those questions.

I. A witness was placed upon the stand by the defendant to prove certain facts, and the State's counsel objected to his testifying, because he had not been placed under the rule with the other witnesses, and had been present in the court room during the trial and heard some of the witnesses testify.   The court sustained the objection, and would not permit the witness to testify.   This was a matter largely within the discretion and under the control of the trial judge, and in such cases it is only when it is apparent that such discretion has been abused to the prejudice of the party complaining that this court will interpose and revise the ruling.   (*Cross* v. *The State*, 12 Texas Ct. App., 84; *Avery* v. *The State*, 10 Texas Ct. App., 200; *Estep* v. *The State*, 9 Texas Ct. App., 366.)   In this instance the court, in our opinion, did not abuse the discretion confided to it, in refusing to allow the witness to testify.

II. The testimony of the three witnesses to the fact that they saw the co-defendants of this defendant, Sharpe and Seargent, in the town of New Prague, the place of the homicide, about eleven days prior to said homicide was properly admitted.   This testimony was admissible for the purpose of identifying two of the parties proved to have been engaged in the perpetration of the murder, and as a circumstance tending to prove preparation for the commission of the crime afterwards consummated by the joint act of these two parties

and the defendant. That Sharpe and Seargent, a short time previous to the killing, were at the same place where it occurred shows that they were not entire strangers in that neighborhood, and tends to prove that they had knowledge of the premises, and that the post-office was situated in the house where deceased carried on business, and where the murder was committed. We think this evidence was relevant and proper, not only against them, but against this defendant, who acted with them in the commission of the murder, it being quite evident that the murder was committed in an attempt to perpetrate a robbery. It seems not only to strengthen the identification of Sharpe and Seargent as two of the murderers, but tends likewise to strengthen the identification of this defendant as the other guilty party, and to show that he was in possession of the same knowledge of the premises and surroundings that might have been obtained by his co-defendants on the occasion of their previous visit to the place. Besides, we think the evidence in this case shows such a complicity between the defendant and his co-defendants as fully justified the admission of this evidence upon the ground of a conspiracy between the three to perpetrate the robbery which they attempted. (*Phelps* v. *The State*, 15 Texas Ct. App., 45; Whart. Cr. Ev., § 698 *et seq.*)

III. The verdict was sufficiently definite. This defendant was the only party on trial, and although the verdict does not refer to him by name, still there can be no room for doubt that he was "the defendant" found guilty by the jury on this trial.

After a careful examination and full consideration of the record, we find no error in the conviction, and it is affirmed.

*Affirmed.*

[Opinion delivered January 31, 1885.]

Judge HURT dissents from this opinion, and his views will be found expressed at length in his dissenting opinion in the case of *H. M. Sharpe* v. *The State*, No. 1689, this day delivered.